**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. CR2-06-129(8)** |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **JAMES K. HAPP,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**OPINION AND ORDER**</u>

## I. INTRODUCTION

This matter is before the Court on Defendant James K. Happ's ("Defendant's" or "Happ's") various pretrial motions. Specifically, this Order addresses Happ's: (1) Motion for a Bill of Particulars (no. 700); (2) Motion for Specific *Brady* Material Relating to the SEC's Declination to Pursue an Action Against Defendant Happ (no. 775); (3) Motion for Production of *Brady* and *Giglio* Material (no. 776); (4) Motion for Pre-trial Production of Jencks Act Material (no. 778); (5) Motion to Disclose & Determine Admissibility of Co-Conspirator's Statements (no. 780); (6) Motion to Preserve Agent's Notes (no. 779); (7) Motion to Examine Charts, Exhibits and Pedagogical Devices (no. 781); (8) Motion for Notice of Intent to Rely on Other Crimes Evidence and Motion *in Limine* (no. 783); (9) Motion to Produce Grand Jury Materials (no. 784); (10) Motion for an *In Camera* Examination of the Presentence Reports of Sherry Gibson and Jon Beacham (no. 782); (11) Defendant's Demand for Discovery (no. 777); (12) Omnibus Motion *in Limine* (no. 854); (13) Motion to Exclude the Term "Dog and Pony Show" From his Trial (no. 855); (14) Motion to Exclude Testimony of William Parizek (no. 856); (15) Motion to Exclude the Government's Summary Exhibits and the Testimony of

Summary Witness, SA Jeffrey Williams (no. 868); and (16) Motion to Exclude Any Opinion Testimony by Special Agent Jeffrey Williams (no. 872); and (17) Motion for Change of Venue (no. 869). The Court will address each motion in turn.

## II. ANALYSIS

### A. Defendant's Motions

#### 1. Defendant's Motion for a Bill of Particulars (no. 700):

Pursuant to Federal Rule of Criminal Procedure 7(f), Happ moves for a bill of particulars, identifying several specific categories of information relating to the conspiracy charges against him about which he claims to need additional information in order to prepare an adequate defense. Specifically, he requests that the government be ordered to provide:

(1) the specific dates on which the government alleges Happ joined the conspiracies charged in Counts 1 and 17 of the superseding indictment;

(2) the specific acts by which the government alleges Happ joined the conspiracies charged in Counts 1 and 17 of the superseding indictment;

(3) the specific location where the alleged conspiratorial agreements that form the basis of Counts 1 and 17 of the superseding indictment were made;

(4) each specific act the government claims Happ committed in furtherance of the conspiracies charged in Counts 1 and 17 of the superseding indictment; and

(5) specificity regarding how Happ 'knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity'as charged in Count 17.

Whether to grant a motion for a bill of particulars lies within the discretion of the district court. *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993). "The function of a bill of particulars is to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v.*

*Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (internal quotation marks omitted). "A bill of particulars is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Id.* (internal quotation marks and citation omitted). Moreover, a defendant is not entitled to a bill of particulars regarding information that is available through other sources. *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *superceded by statute on other grounds,* U.S.S.G § 3B1.1; *see also United States v. Musick*, No. 05-5563, 2008 WL 4090648, at *16 (6th Cir. Aug. 29, 2008); *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (district court has discretion to deny a bill of particulars if the information requested by the defendant is available in some alternative form).

To the extent Happ seeks the specific dates of his alleged involvement in the conspiracies charged in Counts 1 and 17 of the superseding indictment, the Court finds that request is **MOOT**. The Government specified in its response that it believes Happ joined the alleged conspiracies in or around early 2000 and the superseding indictment states that the conspiracies ended on or about November 18, 2002. The Government need not provide more specific detail regarding the dates of the alleged conspiracies. *See United States v. Robinson*, 390 f.3d 853, 867 (6th Cir. 2004) (holding district court did not abuse its discretion in denying a bill of particulars where the indictment included beginning and end date range of the charged conspiracy).

Regarding the other four categories of information requested by Happ, the Court finds that the indictment is sufficiently detailed to allow Happ to prepare a defense, to prevent unfair surprise at trial, and to preclude double jeopardy. The superseding indictment lays out the alleged scheme to defraud in detail including: the names of the indicted co-conspirators; the

relevant dates of the conspiracies; the means used to carry out the conspiracies; as well as several overt acts in furtherance of the conspiracy in Count 1 allegedly performed by Happ.

Moreover, Happ has a wealth of other information provided by the Government from which to guide the preparation of his defense and prevent unfair surprise at trial. The Government has provided Happ with roughly 200,000 pages of discovery materials related to the charges against him and his co-defendants. To the extent that this discovery was too voluminous to be easily digested by defense counsel, on August 15, 2008, the Government provided a narrowed list of the specific documents it may use at trial against Happ (no. 785).

Similarly, in a January 31, 2008 letter, the Government supplied Happ and his co-defendants with information, including trial exhibit number and production number, specifically identifying investor report data that the Government believes is false. Also, several of Happ's co-defendants were tried in February 2008 and Happ has had access to the trial transcript and exhibits since that time. Finally, Happ's co-defendant Lance K. Poulsen was tried in October 2008 and Happ will have the benefit of transcripts and exhibits from that trial to aid in the preparation of his defense. As the conspiracies alleged against Happ are the same conspiracies alleged in the February 2008 and October 2008 trials of Happ's co-defendants, transcripts and exhibits from those trials provide Happ with great detail regarding the conspiracy charges against him. For the foregoing reasons, Happ's motion for a bill of particulars is **DENIED**.

2. Defendant's Motion for Specific *Brady* Material Relating to the SEC's Declination to Pursue an Action Against Defendant Happ (no.775):

Pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), Happ requests that the Court compel the Government to produce: (1) all documents and other evidence relating to the Securities and Exchange Commission's ("SEC's") investigation of

and decision not to pursue an action against Happ; and (2) the identity of the individual SEC employee who made the decision not to pursue an action against Happ. Happ contends that this information is *Brady* material (i.e. it is exculpatory) and is essential to his defense.

The Government responds that it will, and the record suggests that as of date of this Order it already has, complied with the Court's June 27, 2008 Order (no. 701), which required the Government to "identify by production numbers" or produce any previously undisclosed documents obtained through the SEC's investigation of National Century Financial Enterprises, Inc.'s ("NCFE") auditors, trustees, and rating agencies. The Government also contends that the material sought by Happ is (1) outside of its custody and control; (2) is neither material nor relevant to the charges or any defense and, therefore, not *Brady* material; and (3) is subject to the deliberative process, attorney work product, and attorney-client privileges. Nevertheless, the Government forwarded Happ's request to the SEC. The SEC responded in a September 4, 2008 letter that "SEC staff do not have anything responsive to [Happ's request]." Therefore, the Government argues that the request is moot because there is no responsive material.

As an initial matter, the Court notes that it finds that information regarding the SEC's investigation of Happ is discoverable under Fed. R. Crim. P. 16(a)(1)(E). That rule requires production of "books, papers, documents, data, photographs, tangible objects, buildings or places," within the Government's custody or control that are "material to preparing the defense . . . ." Fed. R. Crim. P. 16(a)(1)(E). As the Court explained in its June 27, 2008 Order on Defendants Happ's and Poulsen's motion for discovery of other SEC documents (no. 701), documents held by the SEC are within the Government's control. *United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008) ("[A] prosecutor will be deemed to have knowledge of and

access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." (internal quotation marks omitted); *United States v. Libby*, 429 F. Supp. 2d 1, 5-7 (D.D.C. 2006) (holding that the Government had to produce documents from the Office of the Vice President and the CIA).

To satisfy the materiality standard, the information sought must be relevant to an argument the defendant would make to refute the government's case-in-chief. *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Rule 16's materiality standard is not a heavy burden. Evidence will be deemed material so long as it "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). Happ argues, that unlike the other defendants in this case, he was not the subject of any adverse finding by the SEC and thus, any documents regarding the SEC's decision not to proceed against him are material to his defense and constitute *Brady* material. The Court agrees with Happ that the requested documents are material to the preparation of his defense and that the Government must produce them pursuant to Rule 16.[1]

---

[1] Happ's motion appears to elide the standards of materiality under *Brady* and Rule 16 and thus his motion is styled primarily as a motion for *Brady* materials. However, "[t]he disclosure required by Rule 16 is much broader than that required by the due process standards of Brady." *United States v. Conder*, 423 F.2d 904, 911 (6th Cir. 1970); *United States v. Messerlian*, 832 F.2d 778, 795 (3d Cir.1987) *abrogated on other grounds by United States v. Johnstone*, 107 F.3d 200 (3d Cir. 1997). Unlike the broad standard of materiality under Rule 16, information is material under *Brady* if its non-disclosure undermined the fairness of the trial, such that we cannot be confident in the verdict reached. *Johnson v. Bell*, 525 F.3d 466, 478 (6th Cir. 2008) Therefore, the Court's finding that the requested SEC documents are discoverable under Rule 16 does not mean the Court is convinced that those materials are also *Brady* material.

From the Government's response, however, it appears that the neither the Government nor the SEC has documents responsive to Happ's request. The Court has no reason to disbelieve counsel's representations. Therefore, the Court finds that Happ's motion is **MOOT**. To the extent that the Government subsequently acquires any material relating to the SEC's investigation of Happ which has not been previously been provided to Happ, the Government must disclose it promptly.

      3. <u>Defendant's Motion for Production of *Brady* and *Giglio* Material (no.776)</u>:

Happ requests production of all exculpatory evidence and evidence material to guilt or punishment pursuant to *Brady*, as well as, all information that could arguably be used to impeach any government witnesses pursuant to *Giglio*. *See Brady*, 373 U.S. 83; *Giglio v. United States*, 405 U.S. 150 (1972). Happ further requests that if the Government has a good faith question regarding whether certain evidence constitutes *Brady* material, that the Government present the information to the Court for *in camera* review and notify defense counsel that it has done so.

The Court finds Happ's Motion is **MOOT**. In its response to Happ's Motion, the Government assures Happ and the Court that all information that qualifies as *Brady* or *Giglio* material has already been or will be provided. The Government further represents that it is aware of its discovery obligations under *Brady* and *Giglio* and will continue to comply with those obligations.

Moreover, "the government typically is the sole judge of what evidence in its possession is subject to disclosure" under *Brady*. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (noting also that if the government fails to adequately comply with *Brady* disclosure duties, "it acts at its own peril"); *accord Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (stating

that a prosecutor's decision on disclosure is final unless defense counsel learns exculpatory

evidence was withheld and brings it to the court's attention); *United States v. Hale*, No. 95-5915,

1997 WL 34697, at *2 (6th Cir. Jan. 28, 1997) (under the *Brady* rule the government "must be

assigned the primary responsibility of gauging whether [undisclosed evidence] constitutes

evidence favorable to the accused and is therefore discoverable"); *United States v. Valentine*, No.

94-6195, 1995 WL 390322, at *4 (6th Cir. June 30 1995) (same).

　　　　Absent any indication of misconduct, the Court is entitled to rely on the on the

prosecutor's representations regarding whether evidence in its posession is subject to disclosure

under *Brady*. *United States v. White*, 492 F.3d 380, 411 (6th Cir. 2007); *United States v.*

*Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994). Thus, as there is no evidence of prosecutorial

misconduct in this case, the Court may rely on Government's representations that it is in

compliance with *Brady*.

　　　　The Court does order, however, that if the Government has any question regarding

whether certain evidence constitutes *Brady* material, either currently or at any point in the future,

that: (1) it produce that evidence to the Court for *in camera* inspection and (2) it notify Defense

counsel that it has done so. *See Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 334-35 (6th

Cir. 1987) (noting that a prosecutor may submit possible Brady materials for *in camera* review

by the trial court to determine whether disclosure is required) *United States v. Holmes*, 722 F.2d

37, 41 (4th Cir. 1983) (prosecutor has an obligation to submit material to the court for *in camera*

inspection if there is any doubt about whether it might be exculpatory).

4. <u>Defendant's Motion for Pre-trial Production of Jencks Act Material (no. 778)</u>:

Although titled a "motion for pretrial production," Happ merely requests that, given the complexity of this case, the Court *encourage* the Government to provide pretrial production of Jencks Act Material 30 days before trial.[2]  Happ contends that the Government's witnesses have provided numerous statements to law enforcement officers and the SEC such that production of this voluminous information after direct-examination would prevent detailed analysis before cross-examination.  Thus, Happ claims, at-trial production of Jencks Act material would unnecessarily delay the trial because counsel would be forced to request a reasonable period of time in the middle of trial to review the material.

The Government retorts, and Happ concedes, that the Government cannot be compelled to disclose Jencks Act Material pretrial.  *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988); *see also* Fed. R. Crim. P. 16(a)(2) (specifically exempting Jencks Act material from pretrial discovery). Nevertheless, the Government states that it will provide pretrial discovery of statements made by Government witnesses to facilitate an uninterrupted trial.

---

[2]  The Jencks Act provides that:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case . . . After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement  . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. §3500(a)-(b).

As the Government has already agreed to provide pretrial production of Jencks Act Material "before the first day of trial" and the Court cannot compel the Government to provide pretrial disclosure 30 days before trial, Happ's request is largely ceremonial. However, the Court is sympathetic to the Happ's concerns regarding the time needed to review Jenck's Material. Therefore, Happ's Motion is **GRANTED** and the Court encourages the Government to provide Jenck's Act Material as soon as possible to avoid delay at trial.

5. Defendant's Motion to Disclose & Determine Admissibility of Co-Conspirator's Statements (no. 780):

Happ requests that the Court: (1) compel pretrial disclosure of all statements of co-conspirators who will not testify at trial; and (2) hold an evidentiary hearing to determine whether Happ was part of a conspiracy and whether any alleged co-conspirator statements are admissible. In the alternative, Happ requests that the Government be ordered to refrain from eliciting any alleged co-conspirator's statements or from referring to any co-conspirator's statements until the Court determines the admissibility of such statements at trial. The Government argues that statements of co-defendants or co-conspirator's are not discoverable and that a pretrial evidentiary hearing on the admissibility of co-conspirators' statements is unnecessary.

The Sixth Circuit has found that discovery pursuant to Federal Rule of Criminal Procedure 16 is limited to categories of evidence expressly referred to in the Rule. *Presser*, 844 F.2d at 1285. Therefore, Rule 16 does not require pretrial discovery of co-conspirator's statements. *See id.* (citing *United States v. Roberts*, 811 F.2d 257, 258-59 (4th Cir. 1987) (per curiam)); *accord United States v. Boykins*, Nos. 89-3580, 89-3641, 89-3798, 1990 WL 143559, at *7 (6th Cir. Oct. 2, 1990) (holding "co-conspirator statements do not fall within the ambit of

Rule 16(a)(1)(A)" as a Defendant's statement and were therefore not discoverable pretrial).

Similarly, this Circuit has held that a defendant is not entitled to pretrial disclosure regarding

Government witnesses. *See United States v. Carter*, 621 F.2d 238, 240 (6th Cir. 1988) ("United

States is generally under no duty to provide the statement of a government witness until that

witness has testified"); *United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984) (no duty to

disclose witness lists in a non-capital case).

Happ cites out-of-circuit caselaw that supports his position. *United States v. Degrasse*,

No. Crim.2002/125, 2003 WL 23277264, at *1-2 (D.V.I. Apr. 25, 2003) (ordering disclosure of

co-conspirator's statements but noting that "the general rule is that [Rule 16] does not include

statements made by co-conspirators"); *United States v. Thevis*, 84 F.R.D. 47, 56 (D.C. Ga. 1979)

(co-conspirator's statements discoverable under Fed. R. Crim. P. 16); *United States v. Gallo*, 654

F.Supp. 463, 480 (E.D.N.Y. 1987) (same).  As commentators have noted, however, courts are

split on the discoverability of co-conspirator's statements under Rule 16.  2 Charles Alan Wright

et al., *Federal Practice and Procedure*, §253 n. 20 (3d ed. 2008); 7 *Federal Procedural Forms*,

§20.415 Notes (noting that courts are split on this issue) (2008); John F. Wagner Jr., 115 A.L.R.

Fed. 573 (1993 & 2008 Supp.) (same).  This Court is not free to ignore the law of the Sixth

Circuit on this subject, which has denied pretrial disclosure.  Moreover, the Court does not

believe that Happ will be prejudiced or subjected to unfair surprise from the lack of pretrial

disclosure under the particular circumstances of this case as he has access to the trial transcripts

from the February 2008 and October 2008 trials of his co-defendants during which his alleged

co-conspirator's statements were introduced.  Therefore, Happ's request for pretrial discovery of

co-conspirator's statements is **DENIED**.

Next Happ requests a pretrial evidentiary hearing on the admissibility of co-conspirator's statements under Federal Rule of Evidence 801(d)(2)(E). Before a court may admit co-conspirator's statements under Rule 801(d)(2)(E) the court must find by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statement is offered was a member of the conspiracy, and that the statement was made in the course of and in furtherance of the conspiracy. *United States v. Enright*, 579 F.2d 980, 985-87 (6th Cir. 1978); *accord United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002). A trial court may employ several methods to determine the admissibility of co-conspirators statements. *United States v. Vinson*, 606 F.2d 149, 152-53(6th Cir. 1979). Admissibility may be established by any of the following methods: (1) at trial after the government has established the existence of the conspiracy by a preponderance; (2) at a pretrial "mini-hearing;" or (3) by conditionally admitting the hearsay statements subject to a later showing of their admissibility. *Id*.

This Court prefers the first approach and generally requires the Government to meet its initial burden by producing at trial non-hearsay evidence establishing the existence of the conspiracy and the defendant's involvement. Historically, this Court has rejected the mini-hearing approach that Happ requests because it has found that it amounts to a waste of judicial resources. *See id*. at 152 (noting that the mini-hearing approach has been criticized as "burdensome, time-consuming, and uneconomic"). The Court sees no reason to depart from its usual practice in this case. Therefore, Happ's request for a pretrial evidentiary hearing on the admissibility of co-conspirator's statements under Federal Rule of Evidence 801(d)(2)(E) is also **DENIED**.

Finally, Happ requests that, if the Court decides to determine admissibility at trial, It order the government to refrain from referring to any alleged co-conspirator's statements in voir dire, opening statements, or in its case-in-chief before the admissibility of such statements is ruled on by the Court. As this request is in accordance with the Court's preferred procedure for determining the admissibility of 801(d)(2)(E) statements, it is **GRANTED**. The government must produce evidence of a conspiracy and receive a ruling from the Court before it may reference or elicit from witnesses any co-conspirator statements.

For the reasons set forth above, Happ's Motion is **DENIED in PART** and **GRANTED in PART**.

### 6. Defendant's Motion to Preserve Agent's Notes (no. 779):

Happ requests that the Court order all federal and local law enforcement or other investigative personnel involved in the case to retain all notes made during the investigation, including rough notes, memoranda, and synopses. The Government claims that this motion is moot because it has already requested that agents on the case preserve this material and there is no reason to believe that the agents will not do so. The Court agrees that there is no reason to assume that agents will not comply with the Government's preservation request.

Nevertheless, the Court believes there may be qualitative differences in terms of enforcement between the Government's request to its own agents and a court order that agents must preserve their notes. Therefore, the Court orders that the Government direct all government law enforcement and investigative officials involved in the case to preserve their investigative notes, including rough notes. Happ's motion is **GRANTED**.

7. Defendant's Motion to Examine Charts, Exhibits and Pedagogical Devices (no. 781):

Happ requests that the Court order the Government to produce within a reasonable time before trial all charts, summaries, and other demonstrative or pedagogical evidence that the Government intends to use at trial as well as the documents underlying those items. Happ proposed a November 10, 2008 date as a reasonable time for production.

In its response, the Government states that (1) it will provide Happ with the requested material at a reasonable time in advance of trial; (2) that it has already disclosed the evidence underlying any summaries, charts, and demonstrative exhibits through production; and (3) that the November 10, 2008 disclosure date proposed by Happ is unrealistic because the requested materials will probably not be completed three weeks before the December 1, 2008 trial. Based on the Government's response, the Court does not believe any judicial intervention is necessary at this time. Therefore, the Court finds Happ's Motion is **MOOT** as the Government has already agreed to provide the requested production.

8. Defendant's Motion for Notice of Intent to Rely on Other Crimes Evidence and Motion *in Limine* (783):

Happ requests the Court to order the Government to disclose its intent to use Federal Rule of Evidence 404(b) or "Reverse 404(b)" material. In its response, the Government states that it understands that notice of intent to use 404(b) evidence is a condition precedent to admissibility of such evidence. The Government also states that it has provided notice to Happ on two prior occasions: December 4, 2007 and June 24, 2008. Therefore the Court finds that Happ's request is **MOOT**.

9. <u>Defendant's Motion to Produce Grand Jury Materials (no. 784)</u>:

Happ requests production of the testimony and exhibits presented to the Grand Jury that produced the May 2006 Indictment ("first grand jury") and the July 2007 Superseding Indictment ("second grand jury"). In the alternative, Happ requests that the Court conduct an *in camera* review of those materials looking for "inconsistencies, exculpatory evidence, and omissions." Happ also requests a hearing on this motion. The Government opposes the motion and argues that Happ has made no showing of particularized need or grand jury irregularity as required to warrant intrusion into the secrecy of the grand jury.

Federal Rule of Criminal Procedure 6(e)(3)(E) allows courts to order the disclosure of grand jury materials upon a showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, there is a "strong policy in favor of maintaining the secrecy of grand jury proceedings." *United States v. Azad*, 809 F.2d 291, 294 (6th Cir. 1986). To justify disclosure a defendant must show that he has a "particularized need" or a "compelling necessity" for disclosure such that there is "proof that without access to the grand jury materials, [his] position would be greatly prejudiced or an injustice would be done." *FDIC v. Ernst & Whinney*, 921 F.2d 83, 86 (6th Cir. 1990) (internal quotation marks and citation omitted); *accord Douglas Oil. Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 220-23 (1979); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Happ's claim that he has a particularized need for disclosure of the grand jury materials is based on his suspicion that the first grand jury may have refused to indict him, his suspicion that the Government may have withheld exculpatory evidence from the grand jury, and his suspicion that the government may have failed to present evidence regarding his alleged

involvement in the conspiracy to the first grand jury in an effort to obtain tactical advantage. Happ has failed to make a sufficient showing of particularized need to warrant disclosure of the grand jury materials.[3] Happ's arguments amount to no more than speculation that the timing of his indictment (i.e. that he was not named in the initial indictment produced by the first grand jury but subsequently named in the superseding indictment produced by the second grand jury) suggests prosecutorial misconduct. *United States v. Goff*, No. 3:04 CR 140(14), 2006 WL 418632, at *7 (S.D. Ohio Feb. 20, 2006) ("Speculation of irregularity is not enough to entitle the defendant to disclosure of grand jury material"); *see also Azad*, 809 F.2d at 295 ("A presumption of regularity attaches to grand jury proceedings" and a defendant seeking production bears the difficult burden of proving irregularity.)

Similarly, Happ's concern that the Government may have "withheld" exculpatory material from the grand juries is legally irrelevant as the Government has no duty to provide a grand jury with exculpatory evidence. *United States v. Williams*, 504 U.S. 36, 47 (1992); *United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004). Moreover, Happ's request for disclosure is very broad, asking for full disclosure of both grand jury transcripts for review without any

---

[3] Happ's reliance on *Dennis v. United States*, 384 U.S. 855, 869 (1966) in support of his Motion is misplaced as the circumstances of that case are easily distinguishable. In *Dennis* the Supreme Court found that the limited disclosure of the grand jury testimony of four key witnesses was proper based on, *inter alia*, the seven year gap between the grand jury proceeding and the trial, the fact that the testimony of those witnesses was largely uncorroborated, and the government's concession that the importance of preserving secrecy in that case was "minimal." *Id*. at 871-74. In contrast, in this case: (1) Happ's request is not limited to specific grand jury testimony but seeks a wholesale review of both grand jury proceedings; (2) there has been less than a two year gap between the second grand jury proceeding (after which Happ was first named in the indictment) and trial; (3) the testimony of the Government's witnesses at the trial of Happ's co-defendants was corroborated and interlocking; and (4) the Government has not conceded that there is no need for secrecy.

limitation to specific material. *Dennis v. United States*, 384 U.S. 855, 869 (1966) ("[W]hen disclosure is permitted, it is to be done discretely and limitedly" (internal quotation marks omitted).) Finally, the Court believes a hearing on this Motion is unnecessary. Therefore, Happ's Motion for disclosure of grand jury materials and for a hearing on the Motion is **DENIED**.

10. Defendant's Motion for an *In Camera* Examination of the Presentence Report of Sherry Gibson and Jon Beacham (no. 782):

Happ moves for the disclosure of the Presentence Investigation Reports ("PSR") of Sherry Gibson ("Gibson") and Jon Beacham ("Beacham") and the Report of Dr. Brams, which was filed in connection with Gibson's PSR. Gibson is a former NCFE executive who plead guilty in 2003 to a conspiracy charge related to the alleged fraud at NCFE. She is expected to testify against Happ at his December 2008 trial. Similarly, Beacham is a former NCFE executive who plead guilty in 2007 to a conspiracy charge and a securities fraud charge related to the alleged fraud at NCFE and is also expected to testify against Happ. The Government opposes disclosure arguing that the PSRs do not contain exculpatory or impeachment material and, therefore, Happ cannot show a compelling need for disclosure of the reports.

PSRs are confidential materials prepared to assist district courts in fashioning appropriate sentences. *United States v. Trevino*, 89 F.3d 187, 190 (4th Cir. 1996). The contents of PSRs are generally immune to disclosure to third parties. *United States Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988) (commenting that "in both civil and criminal cases the courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for some other individual or individuals"). Notwithstanding the strong policy preference in favor of maintaining the confidentiality of PSRs, courts have recognized a limited right of defendants to

obtain the PSRs of cooperating witnesses.  If a defendant can describe what exculpatory or impeaching information he expects to find in the requested PSR, the district court is obligated to undertake an *in camera* review of the PSR to determine whether it does indeed contain any such information and whether the defendant's need for that information is "compelling."  *Trevino*, 89 F.3d at 192-93; *United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991); *United States v. Corbitt*, 879 F.2d 224, 239 (7th Cir. 1989) ("Only where a compelling, particularized need for disclosure is shown should the district court disclose the report . . . .")  Where the court finds such "compelling need," it does not necessarily release the entire PSR, but rather only those portions "which are directly relevant to the demonstrated need."  *Corbitt*, 879 F.2d at 239.

### *Disclosure of Gibson's PSR*

In support of his motion for disclosure of Gibson's PSR, Happ references a memorandum filed by Gibson in connection with her sentencing.  The Memorandum references a medical report authored by Dr. Brams which describes Gibson as having a "lack of self-esteem" and states "her desire to please her superiors was the true motivation for her criminal behavior."  Happ argues that Gibson is expected to testify at trial, that her credibility and potential bias are implicated by Dr. Bram's report and, therefore, an *in camera* review by the Court to determine whether the PSR and medical report contain exculpatory or material information is warranted.  The Court agrees and finds that Happ has made a sufficient showing to warrant an *in camera* review.

However, during the February 2008 trial of Happ's co-defendants, Defendants Ayers, Parrett, Speer, Faulkenberry, and Dierker moved for disclosure of Gibson's PSR and the medical report prepared by Dr. Brams in connection with PSR ("Dr. Bram's Report").  As a

result, the Court has already reviewed Gibson's PSR and Dr. Bram's Report and ruled that only one paragraph could be disclosed to Defendants (no. 875). That paragraph was provided to Defendants Ayers, Parrett, Speer, Faulkenberry, and Dierker's counsel at the February trial.

In light of Happ's Motion, the Court has re-reviewed Gibson's PSR and Dr. Bram's Report and agrees with its prior ruling. For the reasons set forth in the Court's February 15, 2008 Order (no. 875), the Court concludes that with the exception of one paragraph, Happ cannot satisfy the stringent "compelling need" standard required for disclosure. Therefore, the Court declines to disclose any portion of the PSR and Dr. Bram's Report beyond the identified paragraph, which will be provided to counsel for the Government and the Defendant in hard copy form.

*Disclosure of Beacham's PSR*

In support of his motion for disclosure of Beacham's PSR, Happ cites Beacham's testimony at the February 2008 trial of Happ's co-defendants. Happ contends that because Beacham testified that in April 2005 he did not think he had committed a crime at NCFE and that he did not have any criminal intent while at NCFE, he may have shared exculpatory material regarding Happ's lack of culpability with his probation officer. The Court finds that Happ has met the standard to obtain an *in camera* inspection of Beacham's PSR.

The Court has carefully reviewed Beacham's PSR and finds that Happ cannot satisfy the "compelling need" standard for disclosure as the report contains no exculpatory material or impeachment material for which Happ has a compelling need. *See Moore*, 949 F.2d at 72. Therefore, the Court refuses to order disclosure of any portion of Beacham's PSR. Accordingly, Happ's Motion is **GRANTED in PART and DENIED in PART**.

19

11. <u>Defendant's Demand for Discovery (no.777)</u>:

In this general discovery motion, Happ requests that the Court grant discovery of seven broad categories of information pursuant to Federal Rule of Criminal Procedure 16(a), the Federal Rules of Civil Procedure, and assorted federal caselaw.  Specifically, Happ requests discovery of the following: (1) Statements of the Defendant; (2) Defendant's prior record; (3) Names and Addresses of Witnesses whom the Government Does Not Intend to Call at Trial; (4) Criminal Records of Government Witnesses; (5) Documents and Tangible Objects; (6) Reports of Examinations and Tests; and (7) Expert Witnesses.  Happ concedes in his Motion that "some of the requested items have already been provided in discovery."  Several categories of requested information are subsumed in Happ's other discovery motions, addressed *supra* Sections II.A.3-6. With regard to all materials sought, the Government has responded that it either has, or will, fully comply with its discovery obligations but objects to the extent that Happ's requests seek information beyond the scope of Rule 16.

Based on the Government's response the Court finds Happ's request is **MOOT** at this time.  If, after reviewing the production provided by the Government and the rulings of the Court in this Order, there is specific material or categories of materials that Happ does not have but believes he has a right to obtain, he may request production of those specific items.

12. <u>Defendant's Omnibus Motion *in Limine* (no. 854):</u>

Happ moves to exclude from trial the following: (1) any reference to the convictions of his co-defendants who were tried in February 2008 and October 2008; (2) any reference to *United States v. Lance K. Poulsen*, No. 2:07-CR-209 (S.D. Ohio 2008) ("Poulsen's obstruction case"), the facts underlying that case, or Lance Poulsen's conviction in that matter; (3) any

reference to Rebecca S. Parrett's disappearance or guilty verdict; (4) any reference to Bernard

Woolfley's qualifications or the qualifications of any other summary witness called by the

Government.   With regard to Happ's first three requests, the Court finds Happ's Motion is

**MOOT**.  In its response to Happ's motion, the Government assures Happ and the Court that it

does not intent to present (1) "the convictions of [Happ's] co-defendants;" (2) evidence of

Poulsen's obstruction case and conviction; or (3) any reference to Rebecca Parrett's

disappearance and conviction.  However, to the extent that Happ's first request seeks to exclude

any reference whatsoever to prior proceedings in this case his request is **DENIED**.  As long as

the Government's questions do not violate any evidentiary rule, the Court will not altogether

preclude references to the prior proceedings as those proceedings may become relevant at trial.

Rather, the Court will rule on appropriate objections at trial, if and when the subject arises.  As

in Lance Poulsen's October 2008 trial, however, the Court orders the parties and their witnesses

to refer to the February 2008 and October 2008 trials of Happ's co-defendants as "prior

proceedings" and testimony from those trials as "prior sworn testimony" or "testimony from a

prior proceeding."

        In support of Hap's fourth request for exclusion, Happ argues that reference to Mr.

Woolfley's (or any other Government summary witness's) qualifications should be excluded

under Federal Rule of Evidence 403 because the probative value of that evidence would be

substantially outweighed by the danger that the jury would be mislead or confused regarding the

capacity in which the summary witness was testifiying or would confer greater evidentiary

credibility weight on the witness's summary.  The Government opposes. It argues that questions

regarding a summary witness's qualifications are relevant and there is no risk that the jury will

give undue weight to the summary witness's testimony or believe the summary witness is an expert witness.

Happ points out that the Federal Rules of Evidence do not require that a summary witness have any particular qualifications. He argues further that Mr. Woolfley's (or any summary witness's) background is irrelevant because it adds "nothing to the jury's understanding of what actions he performed to summarize the data in this case." The Court disagrees. The summary witness's professional background and computational experience will be relevant to the jury's ability to assess the reliability of the summaries prepared by that witness. As the Government points out, given the voluminous accounting and financial records that will underlie any summary testimony in this case, the witness's background in finance and accounting will be important in the jury's consideration of whether the witness understood the records he or she summarized.

Furthermore, the Court does not believe that the risk of confusion or prejudice (if any) stemming from the Government's presentation of its summary witness's background will substantially outweigh the probity of that testimony. The Court is confident that the Jury will not be mislead into viewing the summary witness's "number-crunching" testimony regarding the NCFE's cash flow as expert opinion testimony. *See United States v. Serafino*, 281 F.3d 327, 331 (1st Cir. 2002) (finding that "the jury common-sensically would not have regarded the [summary witness's] 'number-crunching' the figures summarized in [the exhibit] as an expert opinion," even though the court gave an expert witness instruction naming the summary witness and referred to that witness as an expert at trial). Also, the Court will instruct the jury on summary evidence, further reducing any possibility of confusion. *Cf. United States v. Vasilakos*, 508 F.3d

401, 412 (6th Cir. 2007) (finding trial court's failure to give a summary evidence instruction in connection with a hybrid expert/summary witness's testimony could cause juror confusion as the court had given an expert witness instruction regarding that witness). Finally, Happ will have an opportunity to cross-examine the summary witness and may use that opportunity to clarify the witness's role for the jury if he believes that is necessary. Therefore, Happ's motion to exclude any reference to the qualifications of the Government's summary witness at trial is **DENIED**.

13. <u>Defendant's Motion to Exclude the Term "Dog and Pony Show" From his Trial (no. 855):</u>

Happ moves to exclude the use of the phrase "dog and pony show" at trial to refer to the NCFE investor presentations. Happ claims that this evidence is irrelevant and that it has the substantial capacity to unfairly prejudice the jury under Federal Rule of Evidence 403, because the use of the phrase will "invite the jury to view the investor presentations as a sham, no matter what the actual evidence demonstrates." The Government opposes, pointing out that the phrase was used internally at NCFE to describe investor presentations and in the securitizations industry in a non-derogatory manner.

The Court finds Happ's argument unconvincing. The transcripts of the February 2008 trial of Happ's co-defendants confirm that the term dog and pony show was used by employees at NCFE and in the securitizations industry to refer to investor presentations. As such, the Court finds that the phrase is explanatory and relevant. Furthermore, the Court does not believe the probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" based on the jurors's possible negative associations with the phrase, as required for exclusion under Fed. R. Evid. 403. Finally, as was done in the February 2008 trial, defense counsel will have the opportunity on cross-examination to explain that the

phrase did not carry a derogatory connotation within the industry. For these reasons, Happ's Motion is **DENIED**.

14. <u>Defendant's Motion to Exclude Testimony of William Parizek (no. 856):</u>

Happ asks the Court to exclude the testimony of William Parizek ("Parizek"). Happ contends that Parizek's testimony would be (1) irrelevant under Fed. R. Evid. 402, (2) unfairly prejudicial to him under Fed. R. Evid. 403, and (3) cumulative. The Government argues that Parizek's testimony is relevant, important to the overall NCFE story, and would not be unfairly prejudicial to Happ.

*Relevance*

First, Happ argues that Parizek's testimony is irrelevant because (1) he left NCFE three years before Happ was hired; (2) Mr. Parizek is unsure whether he reviewed documents relating to the funding programs in existence during Happ's tenure (NPF VI and XII); and (3) Happ and Parizek's had "radically different" positions at NCFE. The Court finds that these arguments go to the weight of Parizek's testimony, which can be attacked on cross-examination, not to its admissibility.

Under Fed. R. Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Court finds that Parizek's testimony meets this permissive standard, as he will be providing evidence of the overall conspiracy alleged to have occurred at NCFE. Although it is true that Happ and Parizek were employed at different times, Parizek's testimony is relevant because it may provide evidence of the conspiracy that Happ allegedly joined at a later date. The fact that there was

fraud at NCFE before Happ joined the company makes it more likely that there was fraud after Happ joined.

Moreover, the Sixth Circuit has found that "[w]hether the trials were joint or separate, the government could prove the entire scope of the conspiracy, though one defendant's role in it was limited." *United States v. Mayes*, 512 F.2d 637, 645 (6th Cir. 1975). Moreover, in a conspiracy involving multiple transactions, evidence of all the transactions is admissible, even though the defendant did not participate in each of them. *See United States v. Kelley*, 849 F.2d 999, 1004 (6th Cir. 1988). Such evidence is admissible because its probative value "is clearly found within the government's right to prove the entire scope of the conspiracy." *Id.* Therefore, the Court will not exclude Parizek's testimony merely because Happ is not alleged to have been a member of the conspiracy at the time Parizek was at NCFE.

Furthermore, the Court agrees with the Government that Parizek's testimony is relevant because of the similarities between the programs and business practices observed by Parizek and those in which Happ is accused of participating. Even if Parizek testifies that he only found fraud in the operation of the NPF I, II, or V funding programs, rather than the NPF VI and XII programs with which Happ was involved, this does not make Parizek's testimony irrelevant. The fact that Parizek found fraud in the operation of any funding programs at NCFE makes it more likely that NPF VI and XII were fraudulently operated.

*Prejudice and Cumulativeness*

Happ next argues that Parizek's testimony, even if relevant, should be excluded on Fed. R. Evid. 403 grounds because the jury will be confused into believing that Happ should have detected the fraud at NCFE just as Parizek did. Rule 403 provides that although relevant,

"evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. The Court is confident that the jury in this case will be able to distinguish between the roles of the various employees at NCFE and to weigh the evidence fairly.

Although there may be some merit to Happ's claim that he and Parizek were not similarly situated employees at NCFE, this only affects the weight of the evidence and Happ will have ample opportunity to explain such distinctions during cross-examination. Similarly, the Court does not believe that admitting Parizek's testimony will result in Happ's conviction based on guilt by association. Happ is not charged with acts occurring before he allegedly joined the conspiracy. Moreover the jury instructions will inform the jury that Happ can only be convicted of the charges against him and not for the wrong doing of others at NCFE. Finally, having already previewed Parizek's testimony during the October 2008 trial of one of Happ's co-defendants, the Court does not find that Parizek's testimony is cumulative of other witness's testimony. For these reasons, Happ's motion to exclude Parizek's testimony is **DENIED**.

15. <u>Defendant's Motion to Exclude the Government's Summary Exhibits and the Testimony of Summary Witness, SA Jeffrey Williams (868)</u>:

Happ filed an untimely motion *in limine* to exclude the Government's summary exhibits and the testimony of summary witnes special agent Jeffrey Williams ("Williams") on November 19, 2008, three and one-half weeks after motions *in limine* were due. Happ claims that he was unable to file this motion earlier because he was unaware until November 17, 2008 that the Government would not be calling Bernard Woolfley (a consultant who coalesced the data underlying the summary exhibits and William's testimony) at trial. As Woolfley was not called as a government witness during the October 2008 trial of Happ's co-defendant even though

26

Williams was called, the Court is unconvinced that Happ could not have anticipated that Woolfley would not be called at his trial and file his motion in accordance with this Court's deadlines. Nevertheless, to ensure the "expeditious and evenhanded management of trial proceedings" the Court **GRANTS** leave to file the tardy motion. *Weimer v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-844, 2008 WL 4332525, at *1 (S.D. Ohio Sept. 17, 2008). The Court **DENIES** the motion on its merits.

Happ argues that the Government's summary exhibits and the testimony of Williams must be excluded on Confrontation Clause and Fed. R. Evid. 602 grounds because they constitute summaries of summaries created by Woolfley. Happ believes that Navigant's summaries are testimonial hearsay, that Woolfley is their creator, and that the Government's failure to call Woolfley violates his Confrontation Clause rights per *Crawford v. Washington*, 541 U.S. 36 (2004). The Government counters that Williams expected summary testimony and the summary exhibits are not based on testimonial hearsay under *Crawford* and that Williams has the requisite personal knowledge under Rule 602 to support his testimony.

As an initial matter, the Court finds that William's summary exhibits and testimony are not based on Navigant summaries prepared by Woolfley, but, rather, on his independent review of NCFE records. Williams explained during his testimony in the October 2008 trial of Happ's co-defendant, Lance Poulsen, that he independently reviewed and summarized roughly 147,000 NCFE financial records. (Oct. 7, 2008 Trial Tr., Vol IV, 920, 926.) In relation to William's summary, Navigant's role was merely to collect and organize the electronic records to facilitate William's review. (*Id.* at 929-30.) Williams made clear that his testimony and summaries were based on his own analysis of documents that he reviewed–not on Navigant's interpretation of the

1.7 million NCFE records that Navigant amassed. (*Id*. at 921, 926, 930.) While Navigant did produce summary charts and spreadsheets of NCFE data, Williams reviewed the accuracy of those summaries by reviewing the underlying records himself. (*Id*. at 930.) Thus, Williams is competent to testify regarding how his summaries were created, as his summaries were based on documents he reviewed, not on Navigant's or Woolfley's assessment of the documents. In short, the data summarized by Williams was NCFE's own business records recovered from NCFE's funding system, not Navigant or Woolfley's interpretation of that data. (*Id*. at 920.)

*Confrontation Clause*

In *Crawford*, the Supreme Court held that when testimonial hearsay evidence is used against a defendant, the defendant's Sixth Amendment rights under the Confrontation Clause are violated unless the witness was unavailable at trial and the defendant had a prior opportunity to cross-examine him. 541 U.S. at 68. The Court finds that the NCFE financial figures contained in the Government's summary exhibits are "not akin to a witness statement taken in the course of an interrogation by a law enforcement officer, as in *Crawford*," that "these figures are not 'testimonial' in the *Crawford* sense," and that "their admission does not implicate the Sixth Amendment." *United States v. Stein*, __ F.Supp.2d __, 2008 WL 4810065, at *2 (S.D.N.Y. Nov. 3, 2008) (admission of summary charts and documents regarding a company's tax loss figures did not implicate Confrontation Clause concerns).

The Sixth Circuit Appeals Court made clear in *United States v. Jamieson*, that the trial court's admission of summaries under Rule 1006 did not violate the defendant's Confrontation Clause Rights. 427 F.3d 394, 411-12 (6th Cir. 2005). As in this case, the summaries in *Jamieson* consisted of business records seized from the defendant's company. *Id*. The Court

28

explained that *Crawford* defined testimonial hearsay as "'a solemn declaration or affirmation made for the purpose of establishing or proving some fact'," and noted that "'[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark' does not." *Id*. (quoting *Crawford*, 541 U.S. at 51-52.) Consequently, the *Jamieson* court concluded that the business records in the summaries did not "resemble the 'formal statement' or 'solemn declaration' identified as" testimonial in *Crawford*. *Id*. Similarly, the Government's exhibits summarizing NCFE's business records in this case, are not testimonial hearsay and their admission will not violate Happ's Confrontation Clause rights. Happ's counsel may cross-examine Williams at trial regarding the accuracy and import of the summaries.

*Rule 602*

Federal Rule of Evidence 602 prohibits a witness from testifying about a matter unless the witness has personal knowledge of that matter. Fed. R. Evid. 602. As discussed above, Williams has already testified that he prepared his summaries based on his own review of a set of NCFE's financial records. Therefore, he has the requisite personal knowledge to testify about the summaries. *United States v. Tucker*, No. 89-5525, 1990 WL 139225, at *5 (6th Cir. 1990) (holding summary witness's testimony was properly admitted because that witness had attended the trial and prepared his summary calculation based on the evidence he had heard). Williams will be available for cross-examination regarding his preparation of his summary and the Government has already made the financial documents underlying the summary available to the defense. Therefore, his testimony is admissible. *United States v. Modena,* 302 F.3d 626, 633 (6th Cir. 2002) (Summary exhibits are admissible under Rule 1006 when: (1) the underlying

documents are voluminous; (2) the proponent of the summary made the underlying documents available for examination; (3) the underlying documents are admissible; (4) the summary is accurate and nonprejudicial; and (5) the summary is introduced through the testimony of a witness who supervised its preparation)*; United States v. Johnson*, 54 F.3d 1150, 1159 (4th Cir. 1995) (admission of summary evidence is proper where the individual who prepared the chart and the evidence on which the preparer relied are available for cross examination.)  For these reasons, Happ's Motion is **DENIED**.

### 16.  Defendant's Motion to Exclude Any Opinion Testimony by Special Agent Jeffrey Williams (no. 872)

Happ also filed a motion *in limine* to exclude any opinion testimony from the Government's summary witness Jeffrey Williams.  This motion was filed on November 22, 2008, almost four weeks after October 27, 2008 due date for motions *in limine*.   The Court could deny Happ's motion on this ground.  But, because the Court believes it benefits all parties to address evidentiary issues before trial, the Court has reviewed and considered the motion.

Happ requests that the Court prohibit the Government's summary witness, Special Agent Jeffrey Williams, from giving any opinion testimony at trial.  The Court finds that the Happ's motion is **MOOT** because the Government represents in its response brief that it does not intend to elicit any opinion testimony from Williams at trial.

### 17. Defendant's Motion for Change of Venue (869):

Hap moves for a change of venue, arguing that the Columbus, Ohio jury pool has been so saturated with negative media coverage regarding the NCFE case  that he will be unable to receive a fair trial before an impartial jury.

Under Federal Rule of Criminal Procedure 21(a) a court is only required to grant a defendant's motion for transfer if "the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Prejudice requiring a change of venue can be presumptive or actual. *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). Actual prejudice is demonstrated "when review of both the jury voir dire testimony and the extent and nature of the media coverage indicates a fair trial [is] impossible." *Ritchie v. Rogers*, 313 F.3d 948, 952 (6th Cir. 2002) (quoting *Murphy v. Florida*, 421 U.S. 794, 798 (1975)) (internal quotation marks omitted). "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the court-house and the surrounding community." *Foley*, 488 F.3d at 387 (emphasis added). The right to an impartial jury does not require that jurors lack any knowledge of the case or even preexisting opinions to the merits of the case as long as "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961); *see also DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (en banc).

In support of his Motion, Happ adopts the arguments made by his co-defendant, Lance K. Poulsen ("Poulsen"), in Poulsen's Motion to Transfer for Unfairly Prejudicial Pretrial Publicity. This Court denied Poulsen's motion to change venue finding that the coverage of the case has been primarily fact-based and not sensationalized and that Poulsen could not establish presumptive or actual prejudice (no. 810, 6-8). The only additional support Happ provides for his Motion is that (1) there has now also been media coverage of Poulsen's October 2008 trial which might reflect negatively on Happ and (2) there is a web blog which has said a number of

unflattering things about Happ, including stating that Happ might be "the most important criminal of all." The Court does not find these facts sufficient to warrant a change of venue.

First, as with the coverage that preceded Poulsen's trial, the coverage of the Poulsen's October 2008 trial was primarily fact-based and not inflammatory. Second, the presence of a *web blog* containing negative articles regarding Happ does not require a change of venue to another district. The coverage on that blog has not created an inflammatory, circus-like atmosphere in the court-house and the Columbus jury pool. *Foley*, 488 F.3d at 387. Furthermore, web based coverage is not localized and has an equal potential to taint a jury pool in any district. However, the Court is not deaf to Happ's concerns regarding the substantial amount pretrial publicity generated by this case.

As with the October 2008 trial, the Court has already taken measures to identify jurors with potential prejudice based on media exposure and to minimize such exposure. Specifically, the prospective jury members have been sent (1) a letter instructing them to avoid media coverage of this case and (2) a detailed juror questionnaire that includes questions addressing the existence and extent of prospective jurors' media exposure and any opinions prospective jurors may have formed about the case. The results of the questionnaire will allow the parties to identify specific jurors with significant media exposure. During voir dire the Court will conduct a generalized *en mass* voir dire regarding whether a juror is aware of pretrial publicity. Follow-up questions regarding what an individual juror heard about the case through the media will be conducted at sidebar. The Court believes that the voir dire procedures it will employ at trial will be more than sufficient to prevent actual prejudice. Happ has shown neither presumptive nor

actual prejudice arising from the media coverage related to this case. For these reasons, Happ's Motion for Change of Venue is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court finds that (1) Defendant's Motion for a Bill of Particulars (no. 700) is **DENIED IN PART and MOOT IN PART**; (2) Motion for Specific *Brady* Material Relating to the SEC's Declination to Pursue an Action Against Defendant Happ (no. 775) is **MOOT**; (3) Motion for Production of *Brady* and *Giglio* Material (no. 776) is **MOOT**; (4) Motion for Pre-trial Production of Jencks Act Material (no. 778) is **GRANTED**; (5) Motion to Disclose & Determine Admissibility of Co-Conspirator's Statements (no. 780) is **DENIED in PART** and **GRANTED in PART**; (6) Motion to Preserve Agent's Notes (no. 779) is **GRANTED**; (7) Motion to Examine Charts, Exhibits and Pedagogical Devices (no. 781) is **MOOT**; (8) Motion for Notice of Intent to Rely on Other Crimes Evidence and Motion *in Limine* (no. 783) is **MOOT**; (9) Motion to Produce Grand Jury Materials (no. 784) is **DENIED**; (10) Motion for an *In Camera* Examination of the Presentence Report of Sherry Gibson and Jon Beacham (no. 782) is **GRANTED in PART** and **DENIED in PART**; (11) Defendant's Demand for Discovery (no.777) is **MOOT**; (12) Omnibus Motion *in Limine* (no. 854) is **MOOT in PART** and **DENIED in PART**; (13) Motion to Exclude the Term "Dog and Pony Show" From his Trial (no. 855) is **DENIED**; (14) Motion to Exclude Testimony of William Parizek (no. 856) is **DENIED**; (15) Motion to Exclude the Government's Summary Exhibits and the Testimony of Summary Witness, SA Jeffrey Williams (no. 868) is **DENIED**; (16) Motion to Exclude Any Opinion Testimony by Special Agent Jeffrey Williams (no. 872) is **MOOT**; and (17) Motion for Change of Venue (no. 869) is **DENIED**.

**IT IS SO ORDERED.**

                                   **s/Algenon L. Marbley**
                                   **ALGENON L. MARBLEY**
                                   **United States District Court Judge**

**DATE: November 25, 2008**